IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 3:18-cr-00135-2 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| | ) |
| WILLIAM AFARI | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 271, "Motion"),[1] whereby Defendant seeks a reduction of his 24-month sentence and immediate release from custody, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release" under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition, (Doc. No. 273, "Response"), arguing that Defendant has not shown as required "extraordinary and compelling reasons" for compassionate release or that he is not a danger to the safety of other persons, and that other applicable considerations counsel strongly against compassionate release.

---

[1] Such motions are also known as ones for "compassionate release"; thus, the Court refers to both "compassionate release" and "sentence modification" throughout this opinion when referring to Defendant's requested relief. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

PROCEDURAL BACKGROUND

On June 13, 2018, Defendant was charged in three counts of a twelve-count indictment filed against him and four co-defendants. Specifically, the Indictment charged Defendant: in Count One with possession with Conspiracy to Fraudulently Obtain Oxycodone, in violation of 21 U.S.C. § 846; in Count Six with Wire Fraud, in violation of 18 U.S.C. § 1343; and in Count Eleven with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. (Doc. No. 3). On March 28, 2019, he pled guilty to Counts Six and Eleven of the Indictment. (Doc. No. 121). On June 24, 2019, consistent with the parties' joint sentencing recommendation, the Court sentenced Defendant to a term of incarceration of two years on Count Eleven (the statutory mandatory minimum) to run consecutive to one day on Count Six, as well as one year of supervised release. (Doc. No. 188).

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act of 2018, P.L. 115-391, 132 Stat. 5239,[2] the district court may under certain circumstances grant a defendant's motion for compassionate release if what the Court will call the "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier."

---

[2] That paragraph of Section 603 provides:

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

Once it properly can act on a motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court can reduce a sentence under that provision (for any defendant younger than 70 years old)[3] only if it finds extraordinary and compelling reasons to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of showing that "extraordinary and compelling reasons" exist to justify release under the statute. *United States v. Hayward*, No. CR 17-20515, 2020 WL 3265358, at *1 (E.D. Mich. June 17, 2020). And the Court does not write on a clean slate in considering what qualifies as "extraordinary and compelling reasons."

Congress tasked the Sentencing Commission with promulgating "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress directed the Sentencing Commission, in promulgating these policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to these congressional instructions, the Sentencing Commission promulgated U.S.S.G. § 1B1.13, and its application note, which collectively comprise the policy statement(s).

Practitioners of federal criminal law are accustomed to treating the Sentencing Commission's policy statements as advisory only (especially in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005)). They are exactly that in the context of a defendant's original sentencing—but not in the context of a motion under Section 3582(c)(1)(A). In the latter context, they are by statute mandatory, inasmuch as Congress has prohibited courts from granting a sentencing reduction unless "such a reduction is consistent with applicable policy statements

---

[3] This subparagraph provides an alternative ground for relief for defendants who are at least 70 years of age. *See* 18 U.S.C. § 3582(c)(1)(A). It is inapplicable here, however, because Defendant is only 25.

issued by" the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[4]

Together, U.S.S.G. § 1B1.13 and its application note do two things that are relevant here. First, they define, in Application Note 1, "extraordinary and compelling circumstances" to apply in (and only in) situations falling within one or more of five separate and particular categories, which the Court discusses below. *See* U.S.S.G. § 1B1.13 n.1(A)(i)-(ii), (B), (C) & (D).[5] Second, they prescribe additional requirements for obtaining a sentence reduction where the defendant does meet the threshold requirement of "extraordinary and compelling circumstances."[6] Specifically, for a defendant not yet 70 years old (such as Defendant), the court may reduce a sentence if (1) extraordinary and compelling reasons warrant a reduction, *and* (2) the defendant is not a danger to the safety of any other person or to the community, *and* (3) the reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). The Application Note indicates the third requirement may be redundant of the first two, inasmuch as it states that "any reduction made . . . for the reasons set forth in subdivisions (1) and (2) [*i.e.*, U.S.S.G. § 1B1.13(1) & (2)] is consistent with this policy statement." *Id.* at n.5.[7]

---

[4] In *Booker*, the Supreme Court found unconstitutional (*i.e.*, violative of the Sixth Amendment) Congress's directive that the Sentencing Guidelines are generally what was referred to as "mandatory," meaning that sentence generally had to be imposed within the guideline range calculated using the Sentencing Guidelines. To say the least, this limited Congress's ability to make anything about the Sentencing Guidelines mandatory in the context of an original sentencing. But such limitations do not exists in the context of a motion for sentence reduction under Section 3582(c)(1)(A), wherein the Sixth Amendment concerns driving the *Booker* decision are entirely absent.

[5] The Application Note also contains various other instructions for considering whether extraordinary and compelling circumstances exist. Such instructions need not be discussed here, as the Court herein resolves the Motion without any need to refer to them.

[6] It is important to note that these other requirements—being, after all, *requirements*—are mandatory. That is to say, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1(A).

[7] Like many redundancies, this one may seem odd due to its apparent unnecessariness. But it seems motivated by the valid desire to ensure that the Sentencing Commission's criteria for a sentencing reduction expressly both: (a) included the congressional requirement, discussed below, that any reduction be "consistent with applicable policy statements issued by" the Sentencing Commission; and (b) clarified that the required consistency involved nothing more than satisfaction of U.S.S.G. § 1B1.13(1) & (2).

If the court does find these (two or three, depending on how one looks at it) requirements satisfied, the defendant has met the basic eligibility for compassionate release. But even then, the Court does not automatically or necessarily grant the motion for a reduction; instead, it *may*, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce the term of imprisonment (and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment). *See* 18 U.S.C. § 3582(c)(1)(A).

The (familiar) sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Relevant to factor number (5), as discussed above, the Sentencing Commission has issued a binding policy statement regarding reduction of a term of imprisonment under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. As further mentioned above, Application Note 1 to U.S.S.G. § 1B1.13 speaks to what constitutes "extraordinary and compelling reasons," identifying five categories of situations where such reasons may be found to exist. Two of the five involve the defendant's medical condition, *i.e.*: (i) the defendant is suffering from a terminal illness; or (ii) the defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *See* U.S.S.G. § 1B1.13 n.1(A). The next two categories relate to defendants over 65 and defendants with particular grave family circumstances, respectively; they are not applicable to the instant Motion.

As for the last of the five categories (sometimes referred to as the "residual" or "catchall" provision), the Application Note describes it as encompassing the situation where, "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason *other* than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D) (emphasis added).

THE PARTIES' RESPECTIVE POSITIONS

In the Motion, Defendant relies on the prevailing COVID-19 pandemic combined with his medical conditions (*i.e.*, herpes simplex type 1; pre-diabetes; and an unknown skin irritation treated with a steroid cream) to show extraordinary and compelling reasons for his release. (Doc. No. 271 at 3). According to Defendant, these medical conditions place him at an increased risk of severe illness were he to contract COVID-19 because the Centers for Disease Control ("CDC")

reports that "there is strong evidence that Type 2 diabetes increases a person's risk of severe illness from COVID-19" and "use of corticosteroids or immunosuppressive medications increase a person's risk of severe illness from COVID-19." (*Id*. at 3-4). Defendant additionally contends that although he is unaware whether there are any COVID-19 infections in the facility where he is currently imprisoned, Moshannon Valley CI ("Moshannon"), the Court need not "wait until Moshannon [] is overrun to protect [Defendant]," (*id*. at 7), and that "[c]ourts have recognized the importance of removing at-risk inmates from the BOP population, even where there are no confirmed Covid-19 cases yet[.]" (*Id*. (collecting cases)). As a result, Defendant claims he has shown "extraordinary and compelling reasons" for his compassionate release under either Application Note 1(A) or 1(D) of U.S.S.G. § 1B1.13. (*Id*. at 8-10).

Further, Defendant claims that the Section 3553(a) factors weigh in favor of granting Defendant release because, among other reasons, his convictions are non-violent, he poses little to no risk to the public upon release, and he was on pretrial supervision for over one year without any violations of his release conditions before he was designated to Moshannon. (*Id*. at 10-11). Therefore, Defendant asks this Court to "reduce his custodial sentence to time served and to possibly order him to serve a period of his supervision in home confinement." (*Id*. at 11).

The Government argues in response that "[D]efendant's health conditions and the existence of COVID-19 do not create an extraordinary and compelling reason that warrants release." (Doc. No. 273 at 1). The Government asserts that to qualify for compassionate release under Comment 1(A), Defendant

> must establish that his condition falls within one of the categories listed in the policy statement. Those categories include whether the defendant is suffering from a "terminal illness" or the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories

> specified in the application note (and no other part of the application note applies), his or her motion must be denied.

(*Id*. at 7). The Government argues that Defendant's medical conditions do not fall within either of these two categories; therefore, he fails to demonstrate extraordinary and compelling reasons under Application Note 1(A). (*Id*. at 8-10). The Government further argues that the Court cannot determine the existence of extraordinary and compelling reasons under Comment 1(D), because this Court "lacks the Director of [BOP's] authority to determine what other reasons warrant compassionate release." (*Id*. at 10).

Thus, the Government argues that Defendant fails to show extraordinary and compelling reasons to justify his release. And even if Defendant could, the Government further argues, Defendant's request for compassionate release should be denied because the factors under Section 3553(a) militate against granting the Motion. (*Id.*).

## ANALYSIS

### I. EXTRAORDINARY AND COMPELLING REASONS

In addressing the merits, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release under the standards set forth by U.S.S.G. § 1B1.13 and its application note. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

As an initial matter, the Court may not base a finding of extraordinary and compelling reasons on Application Note 1(D) under the circumstances present here. As the undersigned has previously explained:

> As for the last of the five categories (sometimes referred to as the "catchall" category) the Application Note describes it as encompassing the situation where, "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D) (emphasis added). The italicized language raises an issue that has divided the courts: does a district court have the authority to grant compassionate release under the catchall provision based on "other" extraordinary and compelling reasons—*i.e.*, extraordinary and compelling reasons existing in the defendant-movant's case that are not within the scope of U.S.S.G. § 1B1.13 Application Note 1(A), 1(B), or 1(C)—not advanced (or "determined," as the catchall provision puts it) by the Director of BOP? The undersigned previously has taken a position on this issue, answering the question in the negative. *See United States v. Medlin*, Case No. 3:09-cr-00204-1, Doc. No. 105 (M.D. Tenn. May 7, 2020). The question remains a debatable one, but the Court adheres to its prior ruling, holding that where (as here) the Director of BOP has not determined that any such "other" reasons exist in the defendant's case, compassionate release for that defendant can not be predicated on "other" extraordinary and compelling reasons under the catchall provision.

*United States v. Montgomery*, No. 3:15-CR-00184, 2020 WL 3642496, at *4 (M.D. Tenn. July 6, 2020). *See also, e.g., United States v. Justice*, No. CR 7:18-01-KKC, 2020 WL 5549157, at *2 (E.D. Ky. Sept. 16, 2020) (stating that "[t]hese 'other reasons' may only be 'determined by the Director of the Bureau of Prisons'" and thus the court "has no authority to find 'other reasons' that may justify a sentence reduction"). The undersigned realizes that other district judges have come out the other way on this issue, but he adheres to his above-stated views for the reasons set forth in *Medlin*.

Here, the Director of the BOP has not identified any "other reasons" that conceivably could be applicable in Defendant's case, and, as explained, the undersigned believes that he may not do so himself where the Director has not done so. Thus, Application Note 1(D) is simply inapplicable here.

As described above, under Application Note 1(A), a court may find extraordinary and compelling reasons where: (i) the defendant is suffering from a terminal illness; or (ii) the

defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *See* U.S.S.G. § 1B1.13 n.1(A). In the instant case, Defendant relies upon his above-referenced medical conditions (herpes simplex type 1, pre-diabetes, and a skin rash that he treats with a steroid cream), which he claims constitute, when combined with the COVID-19 pandemic, extraordinary and compelling reasons for his release. Because Defendant does not argue that any of these conditions are terminal illnesses, these conditions, when combined with the COVID-19 pandemic,[8] must "substantially diminish[] [D]efendant's ability to provide self-care within the environment of a correctional facility" and must be an illness "from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 n.1(A).[9]

The Court finds that Defendant has not met his burden to show that his medical conditions, even in combination with each other and the risk presented by COVID-19, constitute extraordinary and compelling reasons for his release. In the Court's experience, defendants and the Government alike tend to refer (and defer) to the views of the Centers for Disease Control and Prevention

---

[8] Generalized fear of COVID-19 does not rise to an "extraordinary and compelling reason" justifying release. *See, e.g., United States v. Marco Perez-Serrano*, No. 13-2, 2020 WL 2754914, at *2 (S.D. Miss. May 27, 2020) ("A generalized fear of contracting COVID-19 does not justify compassionate release."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.").

[9] Typically, making a concession that is neither legally nor logically required, the Government concedes that there are "extraordinary and compelling circumstances" to justify release where the defendant suffers from a condition that is "chronic," *if* the CDC says that the particular chronic condition is one that places those suffering from it at a higher risk of severe illness from COVID-19. But the CDC does not list any of Defendant's conditions as chronic conditions that create such a risk; thus, the Government argues that these conditions do not constitute extraordinary and compelling reasons for release.

("CDC") when making their arguments for "extraordinary and compelling reasons" within the meaning of Application Note 1(A). More specifically, typically the Government concedes that if the defendant suffers from a condition that is "chronic," and if the CDC says that the particular chronic condition is one that places those suffering from it at a higher risk from COVID-19, the Government concedes that there are "extraordinary and compelling circumstances" such that the primary requirement for compassionate release is satisfied. And typically, the moving defendant effectively agrees that the question of whether this requirement is satisfied should be answered by reference to the CDC's view on whether the defendant's condition places him or her at a higher risk from COVID-19. Typically, neither side makes more than a minimal (if any) reference to the views of anyone else regarding the relationship between COVID-19 and the defendant's (alleged) medical conditions

Such is the case here. The parties make their respective arguments as to Defendant's satisfaction of the requirement to show "extraordinary and compelling reasons" by reference to whether any of her conditions are identified by the CDC as elevating the sufferer's risk from COVID-19. This is the parties' choice, and it is a reasonable one, even though it is far from the only possible way for the parties (or the Court) to look at the issue. The Court will acquiesce in the parties' mutual approach and will conduct its analysis accordingly, addressing only the CDC's views as to Defendant's asserted medical conditions.

In the Motion, Defendant states that he has herpes simplex type 1, which has been previously treated with prescription medication. (Doc. No. 271 at 3). However, Defendant does not explain how herpes simplex type 1, a condition reportedly shared by nearly half of the

population in the United States,[10] would cause him an increased risk of severe illness if he were to contract COVID-19.

Nor does Defendant explain how his pre-diabetes diagnosis is a "serious physical or medical condition" that makes him more vulnerable to COVID-19. While Defendant points out that the CDC's website states that a person with Type 2 Diabetes is, and a person with Type 1 Diabetes might be, at an increased risk of severe illness from COVID-19, *see Groups at Higher Risk*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (last accessed Sept. 25, 2020), the CDC does not indicate that *pre-diabetes* causes an increased risk of severe illness from COVID-19. Further, numerous courts have found that the condition of being pre-diabetic is by itself not a serious medical condition that justifies compassionate release, even when combined with the risk of COVID-19. *See United States v. Roe*, 2020 WL 3026456 (E.D. Mich. June 5, 2020) ("Defendant's underlying conditions [of pre-diabetes and obesity] do not put him at a higher risk of a dire outcome or death from COVID-19."); *United States v. White*, 2020 WL 2733891 (E.D. Mich. May 26, 2020) ("Defendant's underlying conditions [of high cholesterol and pre-diabetes] do not put him at a high risk of a dire outcome or death from COVID-19."); *United States v. Livingston*, 2020 WL 1905202 (E.D.N.Y. Apr. 17, 2020) ("Indeed, while diabetes is on the CDC's list of high-risk medical conditions, pre-diabetes is not.").

Regarding Defendant's skin condition and treatment thereof, he contends that "[t]here is mixed evidence that use of corticosteroids or immunosuppressive medications increase a person's risk of severe illness from COVID-19." (Doc. No. 271 at 3). Indeed, the CDC states there is "mixed

---

[10] The CDC reports that the prevalence of herpes simplex virus type 1 was 47.8% in Americans aged 14-49. *See Prevalence of Herpes Simplex Virus Type 1 and Type 2 in Persons Aged 14–49: United States, 2015–2016*, Centers for Disease Control, https://www.cdc.gov/nchs/products/databriefs/db304.htm (last accessed September 25, 2020).

evidence," meaning that "multiple studies [have] reached different conclusions about risk associated with" the use of corticosteroids or immunosuppressive medications and a COVID-19 infection. *See Evidence Used to Update the List of Underlying Medical Conditions that Increase a Person's Risk of Severe Illness from COVID-19*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last accessed Sept. 25, 2020). However, even if the Court were to conclude that such "mixed evidence" is enough to create extraordinary and compelling reasons (which it does not so conclude, and likely would not), Defendant has not met his burden to demonstrate he is entitled to compassionate release, because he has provided no evidence that he is currently prescribed a steroid cream, and his medical records reveal that he is not.

In the Motion, Defendant contends that he has "suffered an unknown skin irritation since 2017 and was prescribed a steroid cream medication to treat it."[11] (Doc. No. 271 at 4). However, a review of Defendant's medical records does not reveal any evidence that he currently uses a steroid cream. On February 5, 2020, Defendant underwent a procedure to irrigate and debride an abscess located at his right inguinal groin. (Doc. No. 275 at 169). On February 18, 2020, a medical provider reported in her consult note that Defendant stated "his [] spot is healing. . . . Denies new abscess formation. Refused abscess check today." (*Id*. at 76). Since that time, Defendant's medical records do not reveal any further skin issues, nor do the medical records reveal that Defendant is currently prescribed any steroid cream, or any other type of topical skin cream.

---

[11] The Presentence Investigation Report indicates that Defendant's medical records reflect that Dr. John Ducey prescribed Defendant triamcinolone acetonide cream, 0.1%, a steroid cream, in April 2019. The evidence presently before the Court does not reflect that Defendant is still prescribed this medication. (PSR at ¶ 51).

Thus, Defendant has put forth no evidence that he is still currently using corticosteroids or immunosuppressive medications. Accordingly, Defendant does not meet his burden to demonstrate that any such use supports his request for compassionate release.

Additionally, even if Defendant offered sufficient evidence to demonstrate he is at an increased risk of severe illness if he were to contract COVID-19, he has not shown that he has a particular increased risk of contracting COVID-19 while incarcerated. Defendant's place of confinement (Moshannon) reports zero cases of COVID-19. As one district court recently explained when denying an inmate's request for compassionate release:

> Moshannon currently has zero inmates testing positive for COVID-19. Additionally, Moshannon is implementing the Bureau of Prisons' modified operations plan which attempts to reduce the amount of contact between inmates and isolate any inmates who show symptoms consistent with COVID-19.

*United States v. Plasencia*, No. 1:03-CR-400, 2020 WL 5624139, at *2 (E.D. Va. Sept. 18, 2020). Meanwhile, there are currently 1,129 active cases of COVID-19 in Davidson County, Tennessee, where Defendant proposes to reside if he were released. *See Davidson County COVID-19 Dashboard*, Metro Nashville Public Health Dept., https://nashville.maps.arcgis.com/apps/MapSeries/index.html?appid=30dd8aa876164e05ad6c0a1726fc77a4 (last accessed Sept. 28, 2020).

Thus, the Court finds that Defendant has not provided any "extraordinary and compelling reasons" that justify a term reduction under 18 U.S.C. § 3582(c)(1)(A).

### III. DANGER TO THE SAFETY OF ANY OTHER PERSON OR THE COMMUNITY

Even if he could show extraordinary and compelling reasons, Defendant could be eligible for compassionate release, such that the Court would then proceed to an analysis of the factors under 18 U.S.C. § 3553(a), only if he is not a danger to other persons or the community. *See* U.S.S.G. § 1B1.13. "[T]he defendant has the burden of proof on the issue of his lack of danger to

others and the community." *See United States v. Rodriguez*, No. 3:95CR772, 2020 WL 3260711, at *1 (N.D. Ohio June 13, 2020). Because Defendant fails to qualify for compassionate release, irrespective of whether he would pose a danger upon release, the Court will not address the Government's (certainly colorable) argument that he would pose such a danger.

## IV. SECTION 3553(a) FACTORS

Because Defendant fails to qualify for compassionate release, irrespective of how the Section 3553(a) factors apply to him, the Court will not address the Government's (certainly colorable) suggestion that they militate against compassionate release for Defendant.[12]

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here because Defendant has failed to satisfy even its first requirement, *i.e.*, extraordinary and compelling reasons to justify it.

For these reasons, the Motion (Doc. No. 271) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[12] The Court notes that there is a question as to whether district courts have authority to grant a sentence reduction under section 3582(c)(1)(A) where the defendant's original sentence was based on a mandatory minimum (as was Defendant's in this case). *See United States v. Welsh*, No. 18CR4219-LAB, 2020 WL 5230533, at *1 (S.D. Cal. Sept. 2, 2020). However, because the Court denies Defendant's Motion on the merits, it need not reach the issue.